# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JASON PENNER, individually and derivatively on
behalf of COTTONWOOD VENDING, LLC,

*Plaintiff*,

-*against*-

ANIELLO ZAMPELLA and COINDADO,
LLC,

*Defendants*,

and

COTTONWOOD VENDING LLC,

*Nominal Party*.

Index No. _____

**COMPLAINT**

Plaintiff Jason Penner ("Plaintiff" or "Penner"), individually and derivatively on behalf of Cottonwood Vending, LLC, as and for his complaint against Defendants Aniello Zampella ("Zampella") and Coindado, LLC ("Coindado"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to vindicate the rights of a minority owner of a once highly successful cryptocurrency business, who has been improperly frozen out by the company's managing member and majority owner, and for restitution of assets that were systematically looted from the business to a shell company wholly-owned and controlled by the majority member.

2. In 2015, Defendant Aniello Zampella founded Cottonwood to operate automatic kiosks, known as "Bitcoin ATMs," where consumers can use cash to buy and sell the cryptocurrency known as Bitcoin.

3.　　After founding Cottonwood, Zampella struggled to stabilize and grow the company.  By 2016, Zampella was on the verge of shutting Cottonwood down due to the obstacles that he faced in operating and expanding the business.

4.　　Around the middle of 2016, Zampella turned to a friend and roommate Plaintiff Jason Penner for help.

5.　　Penner agreed to serve as Cottonwood's Chief Operating Officer, a position he held for the next two years.  In that capacity, Penner performed crucial services for Cottonwood, without which it could not have become a viable business, including using his substantial real estate experience to assist with Bitcoin ATM placements, while cutting the company's rental-fee overhead; personally funding approximately $10,000 in Bitcoin purchases to keep the Bitcoin ATMs operational; recruiting key employees to the business; implementing a viable business plan for Cottonwood; and supervising Cottonwood's day-to-day business affairs and maximizing the company's efficiency during its critical initial years in operation.

6.　　Penner performed all these services without receiving any salary. Instead, Zampella, as managing member of Cottonwood, agreed that Penner would be compensated with a 25 percent equity interest in the company.  The core of the parties' bargain was that after Penner got the business up and running and earning a steady profit, the profits would be distributed to the equity partners, including Penner. It was further agreed that once Cottonwood obtained its BitLicense from the New York Department of Financial Services (a goal that was achieved in 2019), the owners would look for an opportunity to sell Cottonwood and distribute the sale proceeds based on their respective equity interests.

7.　　Although he had promised to do so, Zampella never signed a written contract confirming the terms of the agreement.  Zampella also never amended Cottonwood's operating

agreement to reflect Penner's equity interest, initially offering the excuse that he could not officially amend the agreement while Cottonwood was in the process of applying for a BitLicense. Nevertheless, Zampella accepted Penner's services—which were otherwise uncompensated—pursuant to the terms of the agreement that he was a 25 percent owner.

8.      Zampella repeatedly acknowledged Penner's ownership interest in Cottonwood. Indeed, Penner only recently learned that, in a December 2017 text message, Zampella told another minority owner of Cottonwood that he was looking for a way to "kill Jason [sic] equity and all decision making." He would later set out to do just that in violation of the parties' agreement and in breach of his fiduciary duties as managing member of Cottonwood. Of course, had Penner known that Zampella never intended to abide by the parties' agreement, he would never have performed years of uncompensated services for Cottonwood.

9.      In January 2018, Penner stepped down as Cottonwood's COO. At that time, he and Zampella discussed reducing Penner's equity interest from 25% to 10% in exchange for Penner stepping down and ceasing his day-to-day activities on behalf of Cottonwood.

10.     At that time, Penner sent Zampella an email confirming the terms of an agreement to adjust Penner's equity. Zampella acknowledged in a text message that he had read Penner's email and claimed that he would have the company's attorneys draft a formal agreement reflecting the revised agreement "as soon as they are able." But Zampella never sent Penner any written agreement.

11.     Over the next two years, Cottonwood—continuing to benefit from the business plan and operations that Penner put in place during his tenure as COO—was successful and generated substantial revenue. Penner would learn years later that Zampella had systematically stripped Cottonwood of its profits, which he diverted to his wholly-owned shell company at the expense of

3

Cottonwood's minority owners, while at the same time, upon information and belief, improperly avoiding state and federal tax liabilities.

12.     In 2021, Zampella received at least two *bona fide* offers from credible prospective buyers to purchase Cottonwood. Each of these offers would have generated a handsome return for all of Cottonwood's owners—precisely as the parties contemplated when Penner agreed to serve as the company's COO in exchange for an equity interest. However, Zampella would not even consider either offer, refusing to meet with the prospective purchasers, or even to discuss the deals with Penner or Adam Sherman, another minority owner of Cottonwood, who served as the company's Chief Technology Officer. By refusing to engage with these potential purchasers, Zampella failed to obtain the best possible valuation for Cottonwood, to the detriment of the company's minority owners.

13.     Inexplicably, after summarily rejecting two highly favorable acquisition offers, Zampella proceeded to shut down Cottonwood's operations altogether.

14.     In October 2021, Cottonwood's digital wallet was hacked, and funds were stolen from the company, which as of this date have yet to be recovered. This hacking incident, and the resulting injury to the company, were the direct result of Zampella's disregard for proper security controls and refusal to heed the recommendations of Sherman and others as to necessary security measures. After ignoring the recommendations regarding proper security, but before Cottonwood was hacked, Zampella terminated Sherman as CTO. Zampella's breaches of his basic fiduciary duties exposed Cottonwood to hackers who successfully exploited this vulnerability.

15.     Rather than remediating his errors following the hacking incident, Zampella simply deserted Cottonwood altogether, leaving the company's Bitcoin ATMs that had been generating substantial revenue idle. This was not an exercise of business judgment, but simply a decision to

4

abandon the company out of spite to deprive the minority owners of any benefit from the business they created.

16.     Unbeknownst to Penner, Zampella had previously orchestrated a scheme to divert Cottonwood's profits to his wholly owned shell company, Defendant Coindado, through the payment of phony licensing fees, purportedly for the use of software needed to run the business. In fact, the software belonged to Cottonwood, and there was no legitimate basis for Cottonwood to pay any fees to Coindado—Zampella was simply engaging in self-dealing by skimming money from the business to enrich himself at the expense of Cottonwood's minority owners, while also, upon information and belief, improperly evading state and federal tax obligations.

17.     In another brazen act of looting, Zampella transferred 180 Bitcoins from Cottonwood to his personal Bitcoin wallet.  Again, there was no legitimate basis for the transfer— he was simply stealing from his business partners.  In fact, upon information and belief, Zampella routinely commingled corporate and personal bitcoins and funds, and generally treated Cottonwood's assets as his own. Zampella refused to establish a board of directors or other standard corporate controls at Cottonwood and took advantage of the lack of proper corporate controls to enrich himself at the expense of the company and its minority owners.

18.     Zampella is now reneging on his agreement with Penner, which gave Penner equity in exchange for his services as COO, claiming—contrary to the parties' agreement and course of conduct and Zampella's own repeated written and oral statements over the years—that Penner has no ownership interest in Cottonwood at all.

19.     Through this action, Plaintiff seeks: (a) a judicial declaration confirming his equity interest in Cottonwood; (b) an order directing Defendant Zampella to purchase Penners' membership interest at fair value, or alternatively, directing the dissolution of Cottonwood and the

appointment of a receiver; and (c) an order declaring Zampella's self-dealing licensing agreement with Coindado void and requiring restitution of the funds and assets Zampella looted from the company through Coindado and other fraudulent schemes.

## PARTIES

20.     Plaintiff Penner is an individual domiciled in the State of New York. At all relevant times, Penner has been, and continues to be, a minority member of Cottonwood.  From 2016 to 2018, Penner served as Cottonwood's Chief Operating Officer.

21.     Defendant Zampella is currently an individual with residences in New York and Puerto Rico.  Zampella was and is the managing member and majority owner of Cottonwood, a New York limited liability company with its principal offices in New York, and while he was actively operating Cottonwood, Zampella resided and worked in the State of New York.

22.     Defendant Coindado is a Puerto Rican limited liability company with its principal offices at 151 Calle de San Francisco, Suite 200, PMB 5337, San Juan PR 00901-1607.  Coindado is 100% owned and controlled by Zampella.

23.     Nominal Party Cottonwood is a New York limited liability company that had its principal corporate offices at 116 Nassau Street, Fifth Floor, New York, NY 10038.

## FACTUAL ALLEGATIONS

I.     **DEFENDANT ZAMPELLA ENLISTS PENNER TO RUN COTTONWOOD'S OPERATIONS IN EXCHANGE FOR A MEMBERSHIP INTEREST IN THE COMPANY**

24.     Zampella founded Cottonwood in 2015.

25.     Cottonwood's primary business is operating automatic kiosks, known as "Bitcoin ATMs," which enable consumers to buy and sell Bitcoin for cash.  Cottonwood now owns nearly 100 Bitcoin ATMs in various locations throughout New York, New Jersey, and Pennsylvania.

6

26.     Penner and Zampella were friends since at least 2015. After founding Cottonwood, Zampella, whose background is in graphic design and had no experience with business or finance, had difficulty handling the company's operations and sought Penner's assistance. In fact, Zampella was close to shutting down Cottonwood before Penner stepped into a more active role managing the operations of Cottonwood.

27.     Penner has over a decade of experience as a successful New York real estate broker and holds a master's degree in Real Estate Finance and Investments from New York University. Penner also previously served as the Director of Finance of Keller Williams NYC, a New York brokerage that had approximately five hundred agents at the time.

28.     In late 2016, Zampella asked Penner to serve as the company's Chief Operating Officer. Penner accepted the offer and served in that capacity for two years.

29.     The parties agreed that in lieu of a salary, Penner would receive a 25 percent equity interest in Cottonwood as compensation for his services as COO. To induce Penner to accept this deal, Zampella further represented that if Penner could turn Cottonwood into a successful business, he would be entitled to receive distributions from the company's profits, while Cottonwood was in the process of obtaining a BitLicense from the New York Department of Financial Services. Zampella further represented that after Cottonwood obtained the license, the company could and would be sold generating a return for each of its owners.

30.     Zampella repeatedly assured Penner that he would sign a written contract confirming the parties' agreement as to Penner's equity stake in Cottonwood, but he never did so. Nevertheless, for the next two years Defendants acknowledged that Penner was Cottonwood's

7

COO, gave Penner access to internal financial data, and created a Cottonwood email address for Penner to use for business purposes (jason@coinbtm.com).

31.     Moreover, Defendants accepted and benefited from Penner's services that turned Cottonwood into a profitable business for two years. However, Penner was not compensated for his services apart from being promised the 25 percent equity interest to which he was entitled under the parties' agreement.

32.     For example, at Cottonwood's inception, Zampella was paying monthly rental fees of $1,000 or more for each Bitcoin ATM location.  Drawing on his experience in the New York real estate market, Penner helped Cottonwood locate more suitable locations and more favorable rental fees for its Bitcoin ATMs.  This resulted in a substantial savings in overhead, while enabling the company to expand its operations to more profitable locations.

33.     Penner also helped Cottonwood develop a viable business plan, including arranging a secure process for retrieving and processing cash from the Bitcoin ATMs; established a crucial banking relationship for the company with CapitalOne; personally provided Cottonwood access to bitcoins; recruited key personnel, including the company's general counsel; and assisted with a critical financial audit in connection with Cottonwood's BitLicense application.

34.     In written and oral communications, Zampella repeatedly confirmed Penner's 25 percent equity interest in Cottonwood. Penner has learned that on or about December 8, 2017, Zampella sent a WhatsApp text message to Adam Sherman, Cottonwood's in-coming Chief Technology Officer, lamenting that he needed to find "a way to kill Jason equity [sic] and all decision making."

35.     This communication reveals Zampella's dishonorable intentions, while at the same time confirming the parties' initial agreement concerning Penner's equity interest in Cottonwood:

8

there would be no reason for Zampella to scheme "to kill Jason's equity" unless Penner had ownership rights in the first place. Of course, had Penner known that Zampella never intended to honor his equity interest in Cottonwood, Penner would have never provided two years of services to Cottonwood and continued to work on identifying and negotiating with viable purchasers for Cottonwood even after he stepped down as COO.

36.     Further, also unbeknownst to Penner, Zampella told another Cottonwood employee, Marc Quadagno, that he wished he had not given Penner a 25 percent ownership of Cottonwood, so that he would be free to grant equity to other employees, rather than having to pay them a salary. Zampella reportedly told Quadagno that he would nevertheless honor his agreement with Penner, since "he was honorable."

37.     Finally, Zampella again confirmed Penner's ownership interest when Penner stepped down as COO in January 2018. At that time, Penner and Zampella discussed revising Penner's agreement to reduce his membership interest in Cottonwood from 25% to 10% in exchange for Penner stepping down as COO and not having any more involvement with Cottonwood's day-to-day operations.

38.     On January 18, 2018, Penner sent an email to Defendant Zampella setting forth the terms of a revised equity agreement. Penner's email stated:

> Aniello,
>
> This is to memorialize the revised agreement that we came to yesterday on your birthday. We agreed to a reduction of my equity percentage in Cottonwood Vending LLC (originally 25%) to the new amount 10% as a beneficial owner. There is a carve out portion for you before which my percentage kicks in, which is either 300 Bitcoins or $5,000,000 (originally $1,000,000) . . . whichever is the largest amount at the time of that capital event. . . .
>
> If there is anything incorrect about what is written above, or anything further you wish to add, please address with a correction ASAP.

9

39. Immediately after sending the email to Zampella, Penner followed up with Zampella by text message to inform him that he sent "over an email regarding our revised agreement. It's technical but a little dry. Take a look when you get a moment." That same day, Zampella responded by text message and confirmed that he "got and reviewed it. Will have something drafted from Latham soon as they are able."



40.     Upon information and belief, shortly after receiving Penner's email on January 18, 2018, Zampella contacted his attorneys at Latham & Watkins and asked that they draft a written contract reflecting a reduction in Penner's equity interest in Cottonwood.

41.     No such agreement was ever sent to Penner, much less signed.  However, Penner's written exchanges with Zampella in January 2018 are further written confirmation by Cottonwood's managing member and CEO of Penner's original 25 percent ownership stake in Cottonwood.

## II.     ZAMPELLA SUMMARILY REJECTS LUCRATIVE OFFERS TO BUY COTTONWOOD AND THEN ABANDONS THE COMPANY

42.     In 2021, Zampella was presented with two *bona fide* offers from prospective buyers to purchase Cottonwood.  However, Zampella never even considered the offers and soon after abandoned Cottonwood's business operations.

43.     First, Sherman negotiated and presented to Zampella a letter of intent from a prospective buyer, a family office, intent on purchasing Cottonwood for approximately $66 million in cash.  However, to the detriment of Cottonwood's minority owners, Zampella refused even to consider the offer, much less to engage in negotiations that could have increased the company's valuation, and instead summarily rejected the offer out of hand.

44.     Second, Penner presented a separate purchase offer from a competitor of Cottonwood, Athena Bitcoin, which was then on the verge of going public. Penner had multiple meetings with Athena's CEO to discuss the terms of the acquisition before presenting the offer to Zampella.  Athena ultimately offered $25 million in cash, plus equity valued at $70-100 million. Further, because Zampella had expressed a preference for an all-cash offer, Penner even negotiated

11

with another company, GreenBox, to provide financing for this offer, by providing cash in exchange for the equity portion of the acquisition price.

45.     Again, Zampella failed to even consider the offer in good faith, much less engage in negotiations that could have increased the sale value and potentially attracted still more competing offers.

46.     In October 2021, shortly after Zampella refused to even consider or engage in any way with the offers from prospective buyers, Cottonwood's digital wallet was hacked, and funds were stolen from the company that have yet to be recovered. This security breach was the direct result of Mr. Zampella's gross recklessness in failing to heed warnings and professional advice from Sherman and others concerning the implementation of necessary security controls to protect Cottonwood from hackers.  In a shocking breach of his fiduciary duties to the company and its minority owners, Zampella failed to take the necessary protective actions by refusing to implement security controls for Cottonwood's Bitcoin inventory, leaving Cottonwood's operations vulnerable to such attacks.

47.     Following the October 2021 hacking incident, Zampella failed to make the necessary improvements to Cottonwood's security infrastructure, so that it could restart its operations, and persisted in his refusal to consider any offers to purchase the company and its assets.  Instead, Zampella simply abandoned his duties in managing Cottonwood, abandoned the company's employees, and shut down the business altogether.

48.     Currently, Cottonwood's Bitcoin ATMs sit idle, and the company's website is no longer functioning.

49.     Zampella has refused to speak with Penner about the business, either directly or through his attorneys, and, incredibly, now denies that Penner has any ownership interest in the company.

## III.    ZAMPELLA LOOTED COTTONWOOD'S ASSETS TO DEVALUE COTTONWOOD BEFORE ABANDONING THE BUISNESS

50.     While Penner was operating Cottonwood, Zampella refused to establish a board of directors or put in place standard corporate controls.  Long after he stepped down as COO, Penner learned that Zampella exploited the relaxed corporate environment he orchestrated to enrich himself at the expense of Cottonwood and its minority owners.

51.     Upon information and belief, Zampella routinely comingled personal and corporate bitcoins and cash, and helped himself to the company's assets.  In one such incident, Zampella wrongfully transferred 180 BTC from the Cottonwood wallet to his own personal wallet.

52.     In a separate scheme, also unbeknownst to Penner, Zampella used a shell company he owned and controlled, Defendant Coindado, to divert Cottonwood's profits to himself.

53.     First, Zampella caused Cottonwood to sign a license agreement falsely stating that Cottonwood's proprietary software belonged to Coindado and that Coindado was licensing the software to Cottonwood. This was false, as the proprietary software is, in fact, owned by Cottonwood.  However, Zampella signed the license agreement on behalf of both Cottonwood and Coindado without discussing or disclosing it with the minority owners.

54.     The license agreement charges Cottonwood a transaction fee of 5% of the notional value of each transaction. This is five times higher than the 1% fee Cottonwood initially paid to Genesis Bitcoin ATM for using their proprietary software prior to the development of Cottonwood's proprietary software.  In all events, the licensing agreement was a sham to enrich Zampella at the expense of Cottonwood and its minority owners, in breach of Zampella's fiduciary

13

duties. Upon information and belief, Zampella funneled the money he misappropriated through Coindado (a Puerto Rican limited liability company) to improperly avoid state and federal tax obligations.

55. Later, Defendant Zampella unilaterally transferred Cottonwood's proprietary software to Coindado. He did this by seizing every file related to the software code in Cottonwood's git repository and migrating those files to a newly created git repository labeled "Coindado." By doing so, Zampella misappropriated Cottonwood's single most valuable asset to Coindado for his own benefit.

56. Through this unlawful maneuver, Zampella looted Cottonwood's profits and devalued the company.

## FIRST CAUSE OF ACTION
### (Individually, Against Cottonwood, for Breach of Contract)

57. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

58. In 2016, Penner agreed to serve as Chief Operating Officer for Cottonwood.

59. Defendant Zampella, acting as managing member of Cottonwood, agreed that in exchange for his services as COO, Penner would be entitled to a 25% ownership interest in Cottonwood.

60. Penner served as Cottonwood's COO for two years, fulfilling all his obligations under the parties' agreement.

61. Cottonwood and Defendant Zampella refuse to acknowledge Penner's ownership interest in breach of obligations under the parties' agreement.

62. As a result of these breaches, Penner has been damaged in an amount to be determined at trial, but not less than $16,250,000.

14

## SECOND CAUSE OF ACTION
### (Individually, Against Cottonwood, for Declaratory Judgment
### That Penner is an Equity Owner)

63.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

64.     There is actual controversy between the parties with respect to their present rights and legal relations regarding the ownership of Cottonwood.

65.     In lieu of salary, Defendant Zampella, as managing member of Cottonwood, agreed to grant Penner a 25% interest in Cottonwood.

66.     Defendant Zampella now denies Penner holds any equity in Cottonwood in breach of the parties' agreement.

67.     Accordingly, Penner is entitled to declaratory judgment as to his equity interest in Cottonwood.

## THIRD CAUSE OF ACTION
### (Individually, Against Zampella, for Breach of Fiduciary Duty)

68.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

69.     Defendant Zampella, the majority member and managing member of Cottonwood owes a fiduciary duty to Penner, a non-managing member.

70.     As the managing member of Cottonwood, Defendant Zampella owed Penner and other shareholders fiduciary duties of candor, good faith, care, fairness, honesty and undivided loyalty in its dealings with Penner and other shareholders.

71.     Defendant breached his fiduciary duties to Cottonwood's minority owners, including Penner, by refusing to consider bona fide offers from prospective buyers and shortly

15

thereafter abandoned his duties as a managing member of Cottonwood after looting Cottonwood's profit and most valuable asset.

72.     Defendant also breached his fiduciary duties by refusing to implement the proper security controls for Cottonwood's Bitcoin inventory and leaving Cottonwood vulnerable to cyberattacks.

73.     None of the aforementioned actions were fair or reasonable to Penner or other shareholders.

74.     As a result of Defendant's breaches of fiduciary duties to Penner and other shareholders, Penner has suffered damages and Defendant is liable in an amount to be determined at trial, but not less than $16,250,000.

### FOURTH CAUSE OF ACTION
**(Individually for Common Law Dissolution of Cottonwood)**

75.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

76.     Penner is a member of Cottonwood.

77.     Common law (equitable) dissolution is warranted because of Defendant's egregious malfeasance.

78.     As a result of the above-detailed egregious misconduct, common law dissolution of Cottonwood is necessary.

79.     Consequently, this Court should enter an order dissolving Cottonwood and appointing a receiver to wind up its affairs, and/or in the alternative, ordering Defendant Zampella to purchase Penner's equity interest for fair value, prior to the abandonment of Cottonwood.

16

## FIFTH CAUSE OF ACTION
### (Individually for Statutory Dissolution of Cottonwood)

80.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

81.     Penner is a member of Cottonwood.

82.     It is not reasonably practicable to carry on Cottonwood's business in conformity with its respective articles of organization or operating agreement because the managing member has abandoned the business after looting it for his own benefit.

83.     Indeed, Defendant Zampella, as a managing member and majority member of Cottonwood, is unwilling to reasonably permit or promote the stated purpose of Cottonwood to be realized or achieved.

84.     This Court should order the judicial dissolution of Cottonwood pursuant to LLC Law § 702, or alternatively, order Defendant Zampella and/or Cottonwood to purchase Penner's equity interest for fair value prior to the abandonment of Cottonwood.

85.     If the Court orders dissolution, the Court should order the winding up of the affairs of Cottonwood incident to dissolution pursuant to LLC Law § 703.

## SIXTH CAUSE OF ACTION
### (Individually for an Equitable Buyout)

86.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

87.     In lieu of winding up the affairs of Cottonwood, the sale of Cottonwood's assets, and termination of Cottonwood's juridical existence, this Court should order the compulsory buyout of Penner's equity interest in Cottonwood for fair value prior to the abandonment of the business as just and equitable under the circumstances.

17

## SEVENTH CAUSE OF ACTION
**(Individually, Against Cottonwood and Zampella, for Unjust Enrichment)**

88.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

89.     If the Court finds there was no contractual agreement making Penner a member of Cottonwood, then Defendants have all been unjustly enriched by services Penner provided.

90.     Penner provided his real estate and business expertise and other services based on his agreement with Defendant Zampella that he would receive 25% equity of Cottonwood. Pursuant to that agreement, Penner provided crucial services to Cottonwood, which enriched Defendants.

91.     If Penner is found not to be an equity member of Cottonwood, then Defendants unjustly benefited financially from the services provided by Penner. Consequently, Defendants have been unjustly enriched at Penner's expense, and, in good conscience and equity, are liable to Penner for the amount by which they have been unjustly enriched.

## EIGHTH CAUSE OF ACTION
**(Individually, Against Zampella, for an Accounting)**

92.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

93.     As managing member of Cottonwood, Defendant Zampella owed fiduciary duties of candor, good faith and undivided loyalty to Penner, as a minority member.

94.     As set forth herein, Defendant Zampella breached his fiduciary duties.

95.     The full scale of the money and other assets that Defendant Zampella looted from Cottonwood to the detriment of its minority owners is unknown and cannot be ascertained except

18

through an accounting by Defendant Zampella of all money and other asserts that he withdrew or transferred from Cottonwood to himself, Coindado or any other entity in which he had an interest.

96.     Penner accordingly requests that the Court order Defendant Zampella to provide a complete accounting of all money and other assets that he withdrew or transferred from Cottonwood to himself, Coindado or any other entity in which he had an interest.

### NINTH CAUSE OF ACTION
**(Derivatively, on behalf of Cottonwood, Against Zampella, for Breach of Fiduciary Duty)**

97.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

98.     As the managing member of Cottonwood, Defendant Zampella owed Cottonwood fiduciary duties of candor, good faith, care, fairness, honesty and undivided loyalty in its dealings with Cottonwood and its assets.

99.     Defendant breached his fiduciary duties by, *inter alia*, causing Cottonwood to enter into a bogus licensing agreement with his wholly-owned company Coindado, and using that agreement as a vehicle to siphon Cottonwood's profits to his own account; fraudulently transferring Cottonwood's proprietary software to Coindado; commingling Cottonwood's assets with his personal assets and transferring Cottonwood's assets to his personal account; refusing to implement necessary security protocols leaving the company's digital assets vulnerable to hackers; and ultimately shutting down Cottonwood's operations.

100.     As a result of Defendant's breaches of fiduciary duties, the Court should issue an order declaring the licensing agreement between Cottonwood and Coindado void, and ordering restitution of all amounts Cottonwood paid to Coindado under the agreement; ordering Defendant Zampella to restore all funds and assets that he improperly siphoned from Cottonwood; and awarding damages for his other breaches of fiduciary duty in an amount to be determined at trial.

19

### TENTH CAUSE OF ACTION
**(Derivatively, on behalf of Cottonwood, Against Zampella and Coindado
for Restitution/Unjust Enrichment)**

101.    Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs
with the same force and effect as if more fully set forth herein.

102.    Coindado and Defendant Zampella have received money and other assets that
rightfully belong to Cottonwood.

103.    Coindado and Defendant Zampella cannot in equity and good conscience retain,
and should be ordered to make restitution to Cottonwood, with respect to the money and other
assets of Cottonwood that they improperly hold.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment and
grant the following relief: a declaratory judgment, dissolution of Cottonwood, damages in an
amount to be determined at trial, plus interest and attorney fees, and any other relief the Court
deems just and proper.

Dated: January 11, 2023
      New York, New York

**Respectfully submitted,**

**HOGUET NEWMAN REGAL & KENNEY, LLP**

By: _____
      Bradley J. Nash
      Wendy Tsang
      One Grand Central Place
      60 East 42nd Street, 48th Floor
      New York, NY 10165
      Phone: 212-689-8808

      *Attorneys for Plaintiff Jason Penner*

20