UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

COTTONWOOD VENDING,        .   Case No. 1-23-43027-nhl
LLC,                       .
                           .
          Debtor,          .
. . . . . . . . . . . . . .  .
ADAM SHERMAN,              .   Adv. No. 1-23-01093-nhl
INDIVIDUALLY AND          .
DERIVATIVELY ON BEHALF    .
OF COTTONWOOD VENDING,    .
LLC,                      .
          Plaintiff,      .
     v.                   .
                          .
COTTONWOOD VENDING LLC,   .   271-C Cadman Plaza East
ANIELLO ZAMPELLA and      .   Brooklyn, NY 11201-1800f
COINDADO LLC,             .
                          .
          Defendants.     .   April 11, 2024
. . . . . . . . . . . . . ..   3:46 p.m.


          TRANSCRIPT OF HEARING ON [6] MOTION FOR
    REMAND/ABSTENTION AND RELIEF FROM THE AUTOMATIC STAY

          BEFORE HONORABLE NANCY HERSHEY LORD
          UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Plaintiff:        Sadis & Goldberg LLP
                          By:  JENNIFER AMY ROSSAN, ESQ.
                          551 Fifth Avenue
                          Ste. 21st Floor
                          New York, NY 10176


For the Defendant,        Forchelli Deegan Terrana LLP
Aniello Zampella:         By:  GERARD R. LUCKMAN, ESQ.
                          The Omni
                          333 Earle Ovington Blvd., Suite 1010
                          Uniondale, NY 11553


Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.

_____

          **J&J COURT TRANSCRIBERS, INC.**
          **268 Evergreen Avenue**
          **Hamilton, New Jersey 08619**
          **E-mail:  jjcourt@jjcourt.com**

          **(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

```
For the Defendants,      Ievgeniia Vatrenko
Aniello Zampella and     By:  IEVGENIIA VATRENKO, ESQ.
Coindado LLC:            2 Northside Piers, Apt. 19F
                         Brooklyn, NY 11249

For the Chapter 7        Certilman Balin Adler & Hyman, LLP
Trustee:                 By:  ROBERT NOSEK, ESQ.
                         90 Merrick Avenue
                         East Meadow, NY 11554
```

- - -

         COURT CLERK:  The next matter in the adversary,

23-1093, Sherman vs. Cottonwood Vending LLC, et al.

         THE COURT:  Appearances, please.

         MS. ROSSAN:  Jennifer Rossan, for plaintiff, Adam

Sherman, Sadis & Goldberg.

         MR. LUCKMAN:  Good afternoon, Your Honor.  Good

afternoon, Your Honor.  Gerard Luckman, Forchelli Deegan

Terrana, counsel to Aniello Zampella.

         MS. VATRENKO:  It's Ievgeniia Vatrenko --

         COURT CLERK:  Who was that?

         MS. VATRENKO:  It's Ievgeniia Vatrenko, for

defendants, Aniello Zampella and Coindado LLC.

         THE COURT:  I need you to say that much more slowly,

okay?

         MS. VATRENKO:  Yes.  Ievgeniia, I-e-v-g-e-n-i-i-a,

Vatrenko, for defendants, Aniello Zampella and Coindado LLC.

         THE COURT:  Okay.

         MR. NOSEK:  Good afternoon, Your Honor.  Robert

Nosek, Certilman Balin Adler & Hyman, for Richard J. McCord,

the Chapter 7 Trustee of Cottonwood Vending.

         THE COURT:  Anybody else?

                    (No audible response)

         THE COURT:  Okay.  Mr. Luckman, I'm very flattered.

I'm very flattered, Mr. Luckman, that you can't possibly

conceive of anybody doing this but me.

1    MR. LUCKMAN:  Your Honor, I want to address something

2 if I can.  This is Gerard Luckman.  I liked to add something up

3 front with the Court.

4    THE COURT:  Yes.

5    MR. LUCKMAN:  So, Ms. Vatrenko is state counsel for

6 the defendants, and when the matter was removed, the

7 expectation was that the parties who were counsel of record in

8 the state court would be counsels of record in the bankruptcy

9 court.  Unfortunately, she never got notice of the January 9th

10 or the March 7th pretrial conferences.  The only people that

11 got notice were plaintiff's counsel and Eric Horn, who is the

12 attorney that the debtor tried to retain and whose retention

13 was denied by the Court, or it was withdrawn.

14    THE COURT:  But, I'm not holding that against you.

15 We could start again.

16    MR. LUCKMAN:  Well, I think -- I think it's relevant

17 and I want to start again, Your Honor.  I actually do want to

18 start again, because --

19    THE COURT:  We're going to start again.

20    MR. LUCKMAN:  -- I think it --

21    THE COURT:  And I'll start again, too.  I don't see

22 why I want to try this case, but that's how I started last

23 time.  Nobody convinced me.  That's how I came on.  So, you're

24 not in any way --

25    MR. LUCKMAN:  Well, I think --

 1        THE COURT:  You're not prejudiced in any way.  I

 2  think it was the first thing I said last time, too.

 3        MR. LUCKMAN:  I think Your Honor, when we were here

 4  on the 7th, we might have been able to at least address some of

 5  the concerns that your Court had regarding, you know, whether

 6  the defendants would consent to the entry of a final order.

 7  That was a concern.  We could have addressed it right there and

 8  then.

 9        THE COURT:  All right.  I'll accept it.  I'm

10  accepting that.  Okay.

11        MR. LUCKMAN:  We also -- we also, Your Honor, think

12  that, you know, that this case -- there's three cases here that

13  are very similar facts, similar, you know, or similar

14  allegations, I shouldn't say similar facts.  It really would

15  have been ripe for a mediation where --

16        THE COURT:  Okay.

17        MR. LUCKMAN:  -- where maybe one med --

18        THE COURT:  No, it's not too late.  It's not too

19  late.  It's perfect.

20        MR. LUCKMAN:  -- where maybe one mediator would come

21  in and hold three separate mediations.  Now, my view is they

22  get resolved a lot quicker and a lot better in bankruptcy

23  court.

24        THE COURT:  When you say three -- you don't -- you

25  say three separate mediations.  You would -- I don't know if

1  it's three separate mediations or it's one big mediation that

2  the mediator --

3          MR. LUCKMAN:  Well --

4          THE COURT:  -- the mediator -- I don't micromanage

5  mediators, you know that.  The mediator would --

6          MR. LUCKMAN:  I would even --

7          THE COURT:  -- decide how best to do that.

8          MR. LUCKMAN:  Oh, of course.  But I think one

9  mediator could really do a great job.  And, I mean, the facts

10 are different in each case, which, you know, can be addressed.

11 But, we could be, you know, be available for three mediations,

12 one mediation with three other parties.  I just think that, you

13 know, parties like Sherman may want to have a separate

14 mediation, because -- and I don't want to speak for them, but I

15 just think that, you know, their case, you know, they're a

16 little bit further along.  Their facts may be a little

17 different than others.

18          But, I do think that things tend to get resolved very

19 much faster and on more of a consensual basis in the bankruptcy

20 court.  I also think a lot of the claims do belong to the

21 estate, and it's very relevant that it stays here.  And on top

22 of that --

23          THE COURT:  But, I need to say -- let me just say, I

24 don't -- I mean, why do I care -- I don't mean why do I care.

25 I care.  But, why do I care about who owns the debtor?  Why do

1 I care --

2 MS. ROSSAN: Your Honor, this is -- Your Honor, this

3 is Jennifer Rossan for -- we're the movants, you know, for Adam

4 Sherman, and we're the ones that filed the motion for

5 permissive abstention, equitable remand, stay relief and --

6 THE COURT: Well, you didn't do it initially, you did

7 it after I said why do I want to hear this case. But, go

8 ahead.

9 MS. ROSSAN: That's right. Well, you were vocal --

10 you had actually raised it more than once -- a few times.

11 THE COURT: (indiscernible)

12 MS. ROSSAN: You did. You did. And so after that

13 --

14 THE COURT: Actually, one of the things I'm supposed

15 to do -- it's either in the statute or the rule -- one of the

16 things I'm supposed to do, if I am inclined to (indiscernible)

17 I am supposed to let everybody know that and give everybody an

18 opportunity to weigh in. If it's raised by the Court, it does

19 say -- I forget if it's in the actual provision or if it's in a

20 rule, that it's my job to give everybody an opportunity to

21 weigh in on that position when I -- when the Court raises it.

22 MS. ROSSAN: Understood. Let me just -- let me just

23 address a few things that Mr. Luckman said about the --

24 THE COURT: Well, (indiscernible) so we're going to

25 do that.

1          MS. ROSSAN:  I am sorry, Your Honor.  I didn't hear
2    what you just said.

3          THE COURT:  You're going to be quiet, and I'm going
4    to talk to Mr. Luckman, because I'm still talking to Mr.
5    Luckman.  And everyone will have a chance to answer.

6          Mr. Luckman, I'm trying to figure out why I care
7    about the ownership part of this thing --

8          MR. LUCKMAN:  Well, that --

9          THE COURT:  Wait, wait, wait, wait, wait.  I'm going
10   to say what else.

11         MR. LUCKMAN:  Okay.

12         THE COURT:  Also, I just want to be clear to
13   everybody, Mr. Nosek, just to be clear, because different
14   parties were talking about receiving the derivative claims.
15   It's only the Trustee now, right, that has the right to go
16   forward with derivative claims?  Isn't that right, Mr. Nosek?

17         MR. NOSEK:  Robert Nosek.  Generally, the way -- for
18   the Trustee, it's -- we step ahead of -- we can step ahead of a
19   credit -- or, you know, somebody that holds, that can assert
20   the derivative claims, and we take them over, is usually how it
21   works.

22         THE COURT:  Right.  Right.

23         MR. NOSEK:  It doesn't have to be that way.  If we
24   allow them to move forward, I think for the estate purposes, it
25   -- the claims are the claims, right?  I mean, they're basically

1 -- software was transferred that should come back. Bitcoin was

2 transferred that should come back. And, you know, from our

3 viewpoint, the most -- to us, it looks like the most

4 expeditious place in which that should occur, is in the state

5 court in front of Judge Borrok. And that's no offense against

6 this Court. This Court can --

7         THE COURT: No --

8         MR. NOSEK: I mean, we frequently come into Your

9 Honor and tell you --

10         THE COURT: No offense taken.

11         MR. NOSEK: -- that we believe bankruptcy court can

12 go quicker. But, you know, I understand.

13         THE COURT: All right. No, no. Again, I cut off --

14 I'm not looking --

15         MR. NOSEK: Sorry.

16         THE COURT: I'm looking for his argument. I'm still

17 talking to Mr. Luckman.

18         MR. NOSEK: Yep. Okay.

19         THE COURT: Because, you know, I want to make sure he

20 doesn't have ruffled feathers. So -- all right. But, it is --

21 I mean, my understanding is the Trustee takes them over. I

22 mean, to the extent that a Trustee wouldn't take them over, or

23 attorney for Trustee, I'm assuming that's because maybe there's

24 no money in the estate, and somebody's going to do it on behalf

25 of the estate. You know, you arrange that. But, I think

general -- you know, maybe there's a practical reason.  But, I think the Trustee takes over derivative claims.

        MR. NOSEK:  That's a hundred percent true, Your Honor.

        THE COURT:  Yeah.  Okay.  Thank you.  Because there are a few people -- a few people who talked about, you know, being perfectly wondrous happy to do the derivative claims, and it's -- I'm looking at the Trustee for that.  Let's make that clear.

        MR. LUCKMAN:  Yeah.

        THE COURT:  I don't -- I mean, I have to tell you that when I superimpose a permissive abstention analysis, Mr. Luckman, I get there.  And I just -- I do, I get there.  However --

        MR. LUCKMAN:  Well --

        THE COURT:  And it seems to me that everybody -- I'm not going there yet.  It seems to me that everybody could go into the state, you know, people could just go into the same state court.  As far as -- as far as mediation, and it seems to me I do have everybody before me, notwithstanding that the Southern District had remanded, because that party filed the claim, right?  That was the -- it that Taylor?

        MR. LUCKMAN:  That's Taylor, Your Honor.  That's correct, Your Honor.  They filed a claim.

        THE COURT:  So, Taylor filed the claim, so Taylor's

before me. And the purposes for ordering them to mediation. And I have everybody else by way of the adversary proceeding or a claim. Two adversaries I have. So, you know, and if I -- yeah. So, I think that -- I think that mediation makes a lot of sense.

MR. LUCKMAN: I appreciate that, Your Honor.

THE COURT: But, understand -- understand the State Court petitioners understand, in bankruptcy I can order you to mediation even if you don't want to go. Not my favorite way to do it, because it's, you know, you kind of want to have an open mind going into mediation. But, I could -- I'll cajole you to have an open mind. And that's where I think this should go. I think it should go to mediation. If mediation doesn't work, we'll come back and it seems to me we'll have this discussion again. But, mediation often works. And we can figure out -- we can figure out -- the estate has no money, right, Mr. Nosek?

MR. NOSEK: Robert Nosek, for the Trustee. That is currently correct.

THE COURT: Okay. So, what I would do in this case, and you need to be in all three of them or no? I didn't do that much of an analysis of that.

MR. LUCKMAN: Your Honor, this is Gerard Luckman. The Trustee would be in all three. They're all set, I would believe, invested in the interest.

THE COURT: Okay. But, I don't have the -- today I

1  don't have the Penner plaintiff before me, correct?

2         MR. LUCKMAN:  No, Your Honor.

3         MR. NOSEK:  Your Honor, Robert --

4         MS. ROSSAN:  No.

5         MR. NOSEK:  Robert Nosek, for the Trustee.  Penner is

6  not before you.  And we would need to go -- and I appreciate

7  Mr. Luckman, you know, putting that out there.  We would have

8  to verify whether we do need to be in each of these actions.

9         THE COURT:  Okay.  Well, to the extent derivative --

10        MR. NOSEK:  This one we clearly do.

11        THE COURT:  To the extent there are derivative

12 claims, I do want you to be in there.  Now, what I would do in

13 this case is, again, if we -- if we set them up as three

14 separate ones with one mediator, okay, we would divide up the

15 cost amongst the parties in each particular one.  And -- but --

16 I would not have the Trustee pay.  The Trustee would have to

17 have -- I mean, somebody else would have to -- as far as the

18 retainer goes, we'd have to cover a retainer.  And either

19 somebody else is going to put up the Trustee's fees.  But, once

20 there are assets in the estate, then the Trustee would have to

21 pay the Trustee's share of the mediation.

22        But, it wouldn't preclude me from sending everybody

23 to mediation just because there are currently no assets in the

24 estate.  Nor would I require Mr. McCord's firm to cut a check

25 in a case where there are no assets.  So, that's what I'm

1  thinking.  And I'm thinking that maybe it makes sense to

2  adjourn this to the day that the Penner pretrial is on, and

3  then tell everybody at one time, hello, good bye, you're going

4  to mediation.  And between now and then, you can start thinking

5  of, you know, looking at mediation lists.

6          MR. LUCKMAN:  Your Honor, this is Gerard Luckman.  I

7  think the Penner is before you on May 9th.  And I also believe

8  Penner was more willing to keep the case there and probably

9  would welcome mediation.

10          THE COURT:  There meaning where?

11          MR. LUCKMAN:  I said -- I said, they would welcome --

12  they're invited here next time.

13          THE COURT:  No, but -- no.  You said keep the case

14  there, there meaning state court?

15          MR. LUCKMAN:  No.  In New York.  It would be before

16  Your Honor.  Their case has been moved.

17          THE COURT:  You mean keep them in here?

18          MR. LUCKMAN:  Yeah.  They haven't made any motions,

19  and I believe that they're willing to have, you know, they're

20  not contesting the case being before Your Honor.  And I think

21  they would welcome mediation.  And they're next back before the

22  Court, I believe, on May 9th.

23          THE COURT:  And I also need Taylor, correct?

24          MR. LUCKMAN:  Taylor, I think Ms. Vatrenko is working

25  on.  Taylor, actually the -- the case was removed.  Taylor,

1  actually remanded but didn't give notice to anyone. And the

2  District Court granted the remand as an unopposed motion. So,

3  we're working on that. But, they did file a claim. We could

4  reach out to counsel and make them available for the 9th.

5        THE COURT: I can do an order -- I would do a status

6  hearing on that case. I would do a status hearing on that

7  proof of claim, I guess --

8        MR. LUCKMAN: Okay.

9        THE COURT: -- or on the main case, and I would ask

10 -- so, who represents Taylor?

11       MR. LUCKMAN: Ms. Vatrenko, do you know who

12 represents Taylor?

13       MS. VATRENKO: Yes. This is Jenny Vatrenko. It's

14 Alex Banzhaf at Tuttle Yick. And they have appeared in every

15 single hearing in the bankruptcy case before Your Honor. So,

16 they should be aware of the May 9th conference.

17       THE COURT: Spell the last name. Alex --

18       MS. VATRENKO: B as in boy, a-n-z-h-a-f.

19       THE COURT: B-a-n-z-h-a-f?

20       MS. VATRENKO: B-a-n-z-h-a-f, correct.

21       THE COURT: Okay. Okay. Now, Ms. Rossan, not to cut

22 you off. Go ahead.

23       MS. ROSSAN: Okay, Your Honor. This is Jennifer

24 Rossan, for plaintiff, Adam Sherman. Let me first say that, I

25 didn't realize Mr. Luckman was in this case. He filed a notice

1  of appearance in the Chapter 7 on behalf of Mr. Zampella, and

2  told me when we spoke on the phone that he wasn't appearing in

3  this adversary proceeding, and that Ms. Vatrenko was handling

4  it.  So, all of this stuff about who got notice, who didn't get

5  notice, Mr. Zampella has three lawyers.  He has Eric Lerner,

6  Jenny Vatrenko, and Mr. Luckman.  So, any of these claims that

7  three lawyers somehow don't get notice of when to appear, you

8  know, in this case -- you know, to me it doesn't make any

9  sense.  Three different lawyers.

10       And with respect to mediation, what -- well, it's

11 actually in the opposition paper to our motion for abstention

12 of remand, the -- when all of the cases were pending in the

13 state court before the Chapter 11 was filed, and then of course

14 converted by you to a Chapter 7, there was a mediation and

15 attempt -- there was an attempt of mediation of all of the

16 different cases, and it was unsuccessful.  And we object to

17 being sent to a global mediation or another mediation.  This

18 was already attempted.  I mean, I have no idea if Taylor wants

19 to settle a claim or Penner wants to settle his claims.

20       But, we tried, and the mediator that was -- we were

21 court ordered to go to mediation by the Appellate Division, and

22 their mediator tried to do a global mediation, and it was

23 completely unsuccessful.  So, this would just be another delay,

24 another waste of time.  And instead of considering our motion

25 for permissive abstention and equitable remand and stay relief,

which the Trustee does not object to and which Your Honor
initially raised.  And it just -- this -- this -- it's -- for
anybody to say that they didn't have any notice about our
motion for abstention of remand is not -- it's commonly false,
because I sent it to everybody.

          MR. LUCKMAN:  Your Honor --

          MS. ROSSAN:  Please don't interrupt me.  I didn't --

          MR. LUCKMAN:  -- Gerard Luckman --

          MS. ROSSAN:  I didn't interrupt you.

          MR. LUCKMAN:  -- (indiscernible)

          MS. ROSSAN:  That is what you said but -- that is
what you said.

          MR. LUCKMAN:  I said, Your Honor, for the pretrial,
pretrial conference.

          MS. ROSSAN:  But, it doesn't --

          MR. LUCKMAN:  -- to the pretrial.  The pretrial
conference.

          MS. ROSSAN:  Well, the only thing that happened at
the pretrial was that a Court -- the Court mentioned abstaining
and remanding, and then adjourned it to May 9th.  And based on
everything that was said and my research, we moved, we filed a
motion one week later.  And as Your Honor knows, the defendants
in the adversary proceeding have ample time to oppose it,
because they did.  Not only did they oppose it, so that the
motion is fully briefed, they filed a surreply last night at 11

1  p.m., further arguing it. So, everybody's had notice. The
2  motion is fully briefed.
3          This -- we were under -- I -- when I filed the
4  motion, I noticed it for a hearing today on the motion. I
5  mean, there was no -- there was -- I did not anticipate that we
6  would be, instead of discussing the motion or arguing the
7  motion, that we would get ordered to go to a mediation, which
8  we've already done in the state court. These cases have been
9  --
10          THE COURT: Who was your mediator? Who was the
11  mediator?
12          MS. ROSSAN: It was Dan Kold, the appointed mediator
13  from the Appellate Division First Department.
14          THE COURT: Spell it.
15          MS. ROSSAN: K-o-l-d, Daniel Kold.
16          THE COURT: Is that part of their -- I mean, I'm
17  familiar a little bit about -- a little bit of this. The
18  Appellate Division has a group of people that they bring in as
19  part of CAMP, is that what this was?
20          MS. ROSSAN: I'm not sure if they were part of CAMP,
21  but whatever -- in the Appellate Division, I think Mr. Zampella
22  appealed several of Judge Borrok's rulings. So, as a result of
23  his appeals, there's a mandatory mediation --
24          THE COURT: Right.
25          MS. ROSSAN: -- that the First Department forces you

1  to participate in.  And so, we participated in it.  And that

2  mediator --

3          THE COURT:  How long were you in that?

4          MS. ROSSAN:  It went on for a few weeks, because he

5  was trying to do the, you know, we were sending information,

6  and he was also trying to do a global mediation.  Exactly what

7  you discussed.  And then it just -- nothing happened, nothing

8  resolved.  We also tried to resolve our case with -- before --

9  I mean, Mr. Zampella changed lawyers a few times, but their

10  initial set of lawyers, Harter Secrest, we tried to explore a

11  settlement or mediation with them.  And it was unsuccessful.

12  So, we've already tried to mediate or settle our claims twice.

13  And so if Mr. Penner --

14          MR. LUCKMAN:  Your Honor, may I respond?

15          MS. ROSSAN:  I'm sorry, I'm not done yet, Mr.

16  Luckman.  If Mr. Penner --

17          MR. LUCKMAN:  (indiscernible)

18          MS. ROSSAN:  That's okay, I understand.  I stopped

19  for a minute.  But, if Mr. Penner, who has his own adversary

20  proceeding in front of a different judge, wants to go to

21  mediation, I mean, I suppose that could be discussed with Mr.

22  Penner's counsel.  I guess somebody can talk about it with Mr.

23  Taylor's counsel.  But, I --

24          THE COURT:  Wait a minute.  You mean Taylor.  Penner

25  is before me.

1           MS. ROSSAN:  Yeah, yeah.  No, no, no.  What I'm

2    saying is, if Mr. Penner wants to go to mediation, of course,

3    you know, that could be -- I suppose you could order him to go

4    to mediation or talk about it.  Right, his case is currently

5    before you.  Taylor's case is -- was already remanded to the

6    state court.  I understand that he filed a proof of claim, and

7    I guess for that reason you could force him to mediate.  But, I

8    don't know how amendable he would be to it.

9           I mean, their case is -- and the Southern District

10   judge said that there's a threshold issue about whether he even

11   has jurisdiction to reconsider the remand, since the remand

12   already happened.  So, there's not just the merits that the

13   defendants have to overcome to get their case back into federal

14   court and before you, with respect to the one that was removed

15   from the Southern District.

16          THE COURT:  But, are you saying to me -- are you

17   saying to me that if the District -- was it a District Court

18   judge in Southern District?

19          MS. ROSSAN:  Yes.  It was Judge Liman.

20          THE COURT:  Oh, Judge Liman?  Okay, I know Judge

21   Liman.  You're saying to me, if -- when Judge Liman recognizes,

22   or somebody brings Judge Liman's attention, that the motion for

23   remand was not on notice?  That he doesn't have the ability to

24   reconsider it, but wasn't on notice?

25          MS. ROSSAN:  I'm not saying -- I'm not -- I'm not --

1  I'm just saying that what Judge Liman did apparently --

2          MS. VATRENKO:  If I may respond?  If I may respond --

3          MS. ROSSAN:  I'm not --

4          MS. VATRENKO:  -- because I was (indiscernible) in

5  that case, and you're not, Ms. Rossan.

6          MS. ROSSAN:  Okay.  But, I know what happened, and

7  you're not saying what happened.  But, go ahead.

8          MS. VATRENKO:  Yes, Your Honor.  What happened is,

9  the jurisdictional grounds for Mr. Liman to reconsider his

10 order agreement are there.  And the reason why the motion was

11 not remanded based on lack of jurisdiction, and the motion to

12 remand was not made within the 30-day time period that it was

13 supposed to be made, so we lay out the arguments why --

14         THE COURT:  No, no, no.  I wasn't saying that.

15         MS. VATRENKO:  -- Judge Liman (indiscernible)

16         THE COURT:  Maybe I misunderstood.  I thought Judge

17 Liman was saying that since it's already remanded, he can't --

18 but, it doesn't matter.  Okay.

19         MS. VATRENKO:  That's -- Your Honor, exactly.  She

20 did not say that.

21         MS. ROSSAN:  He is saying that.

22         UNIDENTIFIED SPEAKER:  Your Honor, excuse me.

23         MS. VATRENKO:  She did not say that.  She did not say

24 that.

25         UNIDENTIFIED SPEAKER:  Excuse me.  Please, all

counsel, you must state your name before you speak, otherwise
the record will be unclear for transcripts purposes.

MS. VATRENKO:  Yes.  This is Jenny Vatrenko.  Judge
Liman has not ruled that he does not have jurisdiction to
reconsider the case, to be clear.

THE COURT:  Okay.  Okay.  Okay.  Don't you see what a
--

MR. LUCKMAN:  Your Honor --

THE COURT:  -- what a -- this is such a mess.  Don't
you see that everybody should be in one place.  But, not before
me.  I mean, I can't bring these other people -- I can't -- I
mean, I can't bring Taylor here.  So -- except for his claim.
And so, it does make sense for there to be an effort to try --
and again, as far as global, maybe somebody else will take a
crack at it in a different way.  You know, there are usually
mediators who'll think this is a challenge.  It sounds like a
challenge.

MR. LUCKMAN:  And, Your Honor, this is Gerard
Luckman.  May I speak?

THE COURT:  Yes.

MR. LUCKMAN:  I want to make sure it's my turn.  Your
Honor, two things.  One is, I didn't say we didn't get notice
of (indiscernible) motion.  I want to make it clear.  I said
that Ms. Vatrenko, who was counsel of record in the state court
matter, didn't get notice of the pretrial conferences.  But,

1  the next thing is, I think Your Honor is -- you heard why I
2  suggested one mediator, but to have three mediations.  Because
3  I think that it's clear that Sherman's counsel doesn't want to
4  partake in a global resolution and doesn't want the resolution
5  of their matter held up by any need to resolve other matters.
6  And we're amenable to having one mediator and three separate
7  mediations, because the mediator will be of the learning curve
8  on that one side.  And we can do it whatever way the mediator
9  thinks is the best way to do it, but we're willing to do it.
10           MS. ROSSAN:  Your Honor, this is Jennifer Rossan, for
11 Adam Sherman.  Let me -- I just want to add one more thing
12 while Your Honor's considering what she's going to do.  You
13 know, these three cases, Taylor, Penner, Sherman, were all
14 pending in the state court before three separate judges for --
15 I mean, Sherman for two years, Taylor's for -- I don't know how
16 many, and Penner's a little bit shorter time.  All pending
17 before three different judges in the Commercial Division.  And
18 Zampella not once moved to consolidate them or do anything of
19 the sort.  So, he was basically content to -- and he
20 (indiscernible) of them, so litigating in all these different
21 forums for all of these years.
22           And now -- or then he decided on the night that, you
23 know, the night before Sherman was supposed to file his note of
24 issue, and you know, then we would go to trial, he decided to
25 file Chapter 11, which Your Honor, you know, properly converted

1  to a Chapter 7, and here we all are. So, I mean, all of a

2  sudden Mr. Zampella wants everything to be in one forum, after

3  years it wanted to be in this forum no less, after years of

4  litigating in the Commercial Division, where he did absolutely

5  nothing, he was, you know, in all these different cases, and he

6  never moved once to consolidate them in front of one Commercial

7  Division Judge.

8         So, now he's here saying, oh, you had to -- they have

9  to be here, they're all the same. Listen, which is just not

10 the -- this is a totally different tune from what he's been

11 saying all along. And he's somehow managed to settle none of

12 them, even though they were all pending for years.

13        THE COURT: Wait, wait, wait. Let me ask you the

14 question. You don't have stay relief. Even if I -- if I do

15 permissive abstention of remand, you all -- you all have to all

16 --

17        MS. ROSSAN: I asked for it. I asked for stay

18 relief. I did offer stay relief in my motion. I asked for

19 permissive abstention, equitable remand, and relief from the

20 stay. And the Trustee does not approve any of that, and agreed

21 that the most -- the most efficient way to get something -- if

22 we successfully prosecute our derivative claims, the derivative

23 claims on behalf of Cottonwood there'd be something in the

24 estate.

25        THE COURT: You don't have that right. You don't --

1       MS. ROSSAN:  Yes, I can -- what's the Trustee?  They
2   agree.  They filed -- they filed -- they made two filings,
3   saying that they agree to us proceeding in front of Justice
4   Borrok, that they will be like co-plaintiffs with us
5   prosecuting the derivative claims.  We're in the best position
6   to actually prosecute them, because we've been litigating them,
7   and they are trial ready.  And the Trustee agreed.  There's no
8   opposition and no opposition to our stay relief request.

9       THE COURT:  Okay.  I'm not -- I'm not moving against
10  you on your motion.  I am just saying that I want to think
11  about and talk about with all the parties, and I need -- I need
12  to adjourn this.  If I do that, the issue of sending this to
13  mediation -- now, again, I have no -- I've read everything,
14  but, no, I didn't -- that's not true.  I didn't read all those
15  hundreds and hundreds of pages that Mr. Luckman filed.  But, I
16  got the gist.

17      And what I'm saying to you is, is that before anyone
18  says mediation, my notes say, send this to mediation, okay?
19  So, this wasn't -- I'm not -- I'm not saying Mr. Luckman walked
20  in here and said mediation, and I just, you know, fell all over
21  the idea.  That's not what happened.  It was also -- I had the
22  same idea before anyone spoke.  So --

23      MS. ROSSAN:  Your Honor, sorry, I didn't mean to
24  interrupt, but I understand that.  You brought that up the last
25  time, too.  Jennifer Rossan -- Jennifer Rossan, for Adam

1  Sherman. You did. You brought that up last time. You brought

2  up mediation last time. I explained that we had had

3  unsuccessful, two separate unsuccessful attempts, at settlement

4  in -- when we were in the state court. And we could be

5  litigating our claims if this -- the sham Chapter 11 hadn't

6  been filed, and now -- and now another delay. We are trial

7  ready. We already tried twice to resolve our claims, with two

8  different counsel, for Mr. Zampella. It -- because they were

9  unresolvable with two different counsel representing him, which

10  means it's him.

11       And now we're just going to have to undergo another

12  delay. We don't want to mediate. We don't want to medi -- we

13  already tried twice. That should be enough. And we want to

14  prosecute our claims. If it's in front of you, we'll do it in

15  front of you. And if it's -- but, if it's in front of Judge

16  Borrok, we'll go to Judge Borrok, and we're ready to go. And

17  the Trustee doesn't object. And it would get -- it's not --

18       THE COURT: Mr. Nosek -- Mr. Nosek -- Mr. Nosek, how

19  does someone prosecute the claims against the debtor and

20  prosecute the derivative claims? How is Ms. Rossan going to

21  represent the estate with respect to the derivative claims?

22  First of all, she hasn't retained a special counsel. And she

23  represents an adverse interest, because she represents the

24  debtor's creditors, if she is -- if she is taking on that role.

25  So, I don't think you can delegate that, Mr. Nosek. And I

don't think you can, you know, quietly stand there and say, me too, and have them do all the work. I don't think so.

So, if you're not -- which means that your firm would be going to a lot of expense to do this. And it seems to me that you should look at that and end up telling me next time how many cases you're going to be in and what kind of time and expense you're looking at. And that is really another piece of why I think this should go to mediation. It's not clear to me how Ms. Rossan does both those things.

MR. NOSEK: Robert Nosek, for the Trustee. Good points, obviously, that the Court raises. We have considered all of that. I mean, I think we addressed a lot of that within our -- the various submissions that we've put in. I will get to -- in response, I do want to point out -- well, I've been sitting here, obviously, listening to everyone's argument, I did go back and look in the Penner complaint, or what I believe is the Penner complaint, and it does not have -- it has some derivative claims, but not direct -- you took something that needs to come back claims, which those are the -- that, you know, those are the -- to us, that's low hanging fruit in the litigation sphere.

And if those are trial ready in the state court, sending us to mediation and now having to have somebody else catch up on things, you know, from what I've seen, there are some positive rulings that support recovery on those claims

1   down in the state court. So, further delay, at least on those

2   claims, may not make sense. I understand what Your Honor is

3   saying and, you know, it depends. So, I believe, and I mean,

4   yeah, I picked this up from Ms. Vatrenko's filing, and I don't

5   know if somehow they came back into the case through an amended

6   complaint, but it does not appear at this point that there are

7   individual claims that Sherman holds that would result in a

8   monetary recovery that would be competing against assets of the

9   estate.

10         That -- that's -- that would be -- that would be --

11   if that existed, that obviously would be a concern, but if it's

12   not, then I don't know that we have such a barrier to having us

13   sit in the co-plaintiff chair, for instance, to do those claims

14   and that Ms. Rossan's firm handles a lot of the trial prep and

15   that -- which would obviously, again, cut down on what we have

16   to prepare for, and again, delay. Mr. Luckman is doing an

17   admirable job for his clients, but they want delay. That's --

18   that's what they -- they're defendants, that's what they want.

19   We all -- we all --

20         MR. LUCKMAN: No. No, I --

21         THE COURT: Well, mediation --

22         MR. LUCKMAN: This is Gerard Luckman. I disagree. I

23   disagree.

24         THE COURT: Mediation to me is not delay. I don't

25   see mediation as delay. I think mediation is a wonderful thing

1 and often gets you to the result a lot more -- a lot faster and

2 a lot more cheaply, or less expensively, than the litigation

3 route. Because, you know, and we all know that if people are

4 trying to delay, there are ways to do that in litigation all

5 the time. We turn on the TV and hear about it every night, so

6 there are ways to delay litigation.

7 So, what I'll do is this. I'm going to adjourn this

8 to the day I have everybody before me, or I'll direct everybody

9 before me. And I will -- I will -- again, these papers came in

10 fast and furious on a very short amount of time. I will reread

11 all the pros and the cons with respect to your views on

12 permissive abstention and equitable remand. And I will -- I

13 will, you know, decide next time after I hear from everybody

14 whether or not I'm going to send you to mediation, or I'll stay

15 and send this case back.

16 MR. LUCKMAN: Thank you, Your Honor.

17 MS. ROSSAN: Okay.

18 MR. NOSEK: Thank you, Your Honor.

19 COURT CLERK: Judge --

20 THE COURT: Mr. Luckman, Mr. Luckman, have you -- Mr.

21 Luckman --

22 MR. LUCKMAN: Yes?

23 THE COURT: You know, I know you have -- you're the

24 bankrup -- you're a bankruptcy guy, right? So --

25 MR. LUCKMAN: Yes.

1          THE COURT:  -- I think that we should -- I concede

2     this should go back into the estate?

3          MR. LUCKMAN:  I'm sorry?  You broke up a little bit,

4     Your Honor.

5          THE COURT:  I said, are there any -- is there

6     anything that your client's willing to concede will go back

7     into the estate?  I mean, are you willing to try to resolve the

8     portions of that?  Are there -- are there any slam dunks here

9     that -- where it's clear some should go back into the estate?

10          MR. LUCKMAN:  There are the slam dunks that the

11     Trustee believes, or anyone believes.  There's documents to the

12     contrary, Your Honor.  But, that being said, I know the case

13     was filed before you and we have, you know, if Your Honor was

14     going to convert the case and not keep -- and not keep these to

15     resolve with the Trustee, that would have made no sense to

16     convert rather than dismiss.  So, we are where we are and I

17     agree with the path you're taking us on.

18          THE COURT:  So, I'm just going to go back to the date

19     that we said we were going to get together, which is May --

20          UNIDENTIFIED SPEAKER:  Judge, I can tell you.  It's

21     scheduled for -- the Penner adversary is scheduled for May 9th

22     at 2:30.  And I just wanted to note for the record that there's

23     another removed action for that date also, for a pretrial.  And

24     with Secured -- Secured Card Management against the debtor and

25     Mr. Zampella, as well.

1          THE COURT:  What is that about?

2          UNIDENTIFIED SPEAKER:  I don't know.  But, it's on

3  the same date, just so that everyone has notice of --

4          THE COURT:  So, that's May 9th.  But, didn't -- I

5  thought -- didn't we already put something else out for May

6  11th?

7          UNIDENTIFIED SPEAKER:  No.  I think it was May 9th

8  that we were going to --

9          COURT CLERK:  Yeah, it was the 9th, Judge.

10          THE COURT:  What time?

11          COURT CLERK:  At 2:30.

12          THE COURT:  And that's when the Judge is on, as well?

13          MR. LUCKMAN:  Your Honor --

14          COURT CLERK:  I didn't hear what you said, Judge.

15          UNIDENTIFIED SPEAKER:  The May 9th at 2:30 is for

16  both of those -- it's the Penner, and this other removed

17  action.

18          THE COURT:  Okay.  So, if we adjourn -- when -- so,

19  when is the pretrial adjourned to in this one?  That's not on

20  today.

21          UNIDENTIFIED SPEAKER:  When is -- could you repeat

22  the question?  Sorry, I didn't hear.

23          THE COURT:  When is Sherman versus Cottonwood's pre

24  -- adjourned pretrial?

25          COURT CLERK:  It's the May --

1         MS. ROSSAN: May 9th, I think it was.

2         COURT CLERK: Yeah. It's the May 9th at 2:30, Judge.

3         THE COURT: Okay. So -- all right. So, now the only

4 one I have to -- so, Penner's on then and this other one is on

5 -- so, what I have to do is, I have to direct -- I have to hold

6 a status on the -- I'll hold a status hearing on the Taylor

7 proof of claim, because I don't have the adversary, and direct

8 that Taylor and the attorney be before me at that same time.

9         MR. LUCKMAN: Thank you, Your Honor.

10         THE COURT: Thank you, all.

11         MR. NOSEK: Thank you, Your Honor.

12         MS. VATRENKO: Thank you.

13         UNIDENTIFIED SPEAKER: Thank you.

14                   * * * * *

15

16

17

18

19

20

21

22

23

24

25

1   **C E R T I F I C A T I O N**

2           I, KIM WEBER, court approved transcriber, certify

3   that the foregoing is a correct transcript from the official

4   electronic sound recording of the proceedings in the above-

5   entitled matter, and to the best of my ability.

6

7   /s/ Kim Weber

8   KIM WEBER

9   J&J COURT TRANSCRIBERS, INC.    DATE:  April 24, 2024

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25